UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| In re: ) | |
| ) | |
| **ALBION DALE WRIGHT and** ) | Case No. 13-18658 HRT |
| **SUSAN KAYE WRIGHT,** ) | |
| ) | Chapter 7 |
| **Debtors.** ) | |
| ) | |

### ORDER

This case comes before the Court on the *United States Trustee's Motion to Examine Reasonableness of Bankruptcy Petition Preparer's Fees* (docket #24) and the response thereto (docket #27) filed by Heather P. Shockley.

The United States Trustee ("UST") seeks an order under 11 U.S.C. § 110(h)(3)(A)(i) disallowing the fee collected by Heather Shockley and The Rock Consumer Services ("Shockley").

### I.  FACTS

Shockley is a bankruptcy petition preparer ("BPP") as that term is defined in the Bankruptcy Code.  11 U.S.C. § 110(a)(1).  However, bankruptcy schedule preparation is a small part of her business.  Shockley assists low income persons and others in need to access various social and legal services.  Clients come primarily by referral from church affiliated organizations.  Shockley is seeking non-profit tax status for her business.  These Debtors were referred to her by a local pastor.

The evidence before the Court consists mainly of Shockley's testimony as well as that of the UST's expert witnesses.  The Court finds the expert testimony to be credible and of assistance to the Court.  The Court also finds Shockley to be a credible witness.  That is important because it is Shockley's testimony that provides the primary evidence concerning the operation of her business in general and the process she employed in preparing these Debtors' schedules.

Shockley collected a fee in the amount of $575.00 from the Debtors.  The evidence is that the fee is made up of three separate components: $192.00 for credit reports; $39.00 for photocopying; and $385.00 as the charge for form preparation at the rate of $35.00 per hour for eleven hours.  Those charges add up to $616.00 and the total was discounted by $41.00 to result in the $575.00 that was charged.  That effectively reduced the charge for schedule preparation from $385.00 to $344.00 because the other charges represent amounts that Shockley paid and passed through to the Debtors.

ORDER AND NOTICE OF EVIDENTIARY HEARING
Case No. 13-18658 HRT

## II. DISCUSSION

A. Fee for Credit Reports

The Court will allow the $192.00 charged for credit reports. The evidence is that Shockley paid $32.00 each for six reports from the credit reporting agencies and passed that fee on to the Debtors with no mark-up. That is a pass-through charge that Shockley paid out-of-pocket. The evidence is that the Debtors had recently utilized their free credit reports for another purpose and were no longer entitled to receive free reports. Further, the evidence is that the Debtors requested that Shockley obtain the reports to assist them in compiling information for their creditor schedules.

The UST has put forth two objections to this charge. First, the UST argues that a BPP cannot charge for credit reports because a BPP cannot use a credit report in the preparation of a debtor's schedules and, second, the UST presented evidence that creditor reports can be obtained for a lower price.

The UST cited the case of *In re Rosario*, 493 B.R. 292, 336 (Bankr. D. Mass. 2013), in support of the proposition that a BPP exceeds its role as a petition preparer if it pulls a credit report for use as an aid in preparing bankruptcy schedules because 11 U.S.C. § 110 limits a BPP to the role of simply transcribing information provided by a debtor onto a set of bankruptcy schedules.[1] But *Rosario* is not applicable here. There is no evidence before the Court that Shockley personally made use of the reports. Nor does she routinely obtain credit reports whenever she prepares a set of bankruptcy schedules. To the contrary, Shockley testified without contradiction that the reports were requested by the Debtors for their use in providing Shockley with the creditor information. That is a substantially different circumstance than where a BPP charges a client for a report the BPP obtains for his or her own use in the preparation of the schedules. Here, the Debtors requested the reports and it was the Debtors who used the reports to put together their lists of creditors for Shockley to use in preparing the schedules.

The other issue is whether the $192.00 fee for the credit reports should be disallowed – or reduced – because it is excessive. The UST presented expert testimony. The UST's experts are not BPPs, but are individual's with substantial bankruptcy schedule preparation experience who contract with attorneys to prepare schedules under the attorney's supervision. Both witnesses testified that they, or the attorneys they contract with, obtain the same credit reports at much lower cost. Both experts opined that Shockley could also obtain credit reports at a lower cost.

---

[1] Because, the Court finds that the facts of this case are distinguishable from *Rosario*, the Court neither adopts nor rejects *Rosario*'s limitations on a BPP's activities.

ORDER AND NOTICE OF EVIDENTIARY HEARING
Case No. 13-18658 HRT

The Court accepts the expert testimony that Shockley paid more for the credit reports than necessary. But the evidence is that she obtained the reports at the Debtors' request and that Shockley passed on to the Debtors' the fee that she actually paid for the reports and nothing more. There is no evidence before the Court from which it could infer that Shockley acquired reports for the Debtors in anything other than an arms-length transaction. The fact that she could have obtained reports less expensively – even substantially so – provides no basis for the Court to deny her the ability to recover the out-of-pocket cost that she actually paid to an unrelated vendor for the reports. The Court will allow the fee paid for credit reports.

B. Copy Costs

There is no controversy with respect to the fee for photocopying. The Debtors requested additional copies and the Court has no evidence that the charge of $.20 per copy is excessive.

C. Hourly Charge for Schedule Preparation

That leaves, for the Court's consideration, the cost of schedule preparation. The evidence is that the Debtors sought an emergency bankruptcy filing in order to stop a garnishment of Mr. Wright's pay check that would have occurred on the following day. They arrived at Shockley's office in the early afternoon and Shockley worked with then until late that night to complete all of the required schedules.

Shockley is not a highly experienced BPP. She does provide bankruptcy schedule preparation for clients, but it is a small part of her overall business and she estimates that she prepares schedules for about one case per month. She charges $35.00 per hour for time spent and she charged for 11 hours of time for these Debtors. Under normal circumstances, 11 hours of preparation time for a set of bankruptcy schedules is quite extraordinary.

For a BPP, the Court imagines, the most efficient process would be to have a set of standard bankruptcy schedules that the customer has already entered all of the appropriate information on so that the process of preparation involves no more than transcribing what the debtor has entered on the forms. In terms of efficiency, this case represents the opposite end of the spectrum. As described by Shockley, the Debtors sat with her and dictated information to be entered on the schedules. The process that Shockley described is hardly an efficient one but it was a process driven by the Debtors' desire to have bankruptcy schedules prepared and ready for filing first thing the following morning.

The evidence is that there was down-time included in the 11 hours. The Debtors have a large family. It was necessary to pick children up from school and to feed the family during the time that the Debtors spent with Shockley. The evidence also is that Shockley agreed to complete the schedule preparation for the Debtors during that afternoon and evening. She cleared her schedule of other obligations and remained available to the Debtors throughout the

ORDER AND NOTICE OF EVIDENTIARY HEARING
Case No. 13-18658 HRT

time period. The precise amount of non-productive time is not detailed in the evidence. What is clear is that Shockley was at the Debtors' disposal throughout the 11 hour period and worked around their family obligations.

Shockley does not use a bankruptcy schedule preparation program. On the Court's web site, members of the public may access bankruptcy forms. There are packets of forms available for both chapter 7 and chapter 13 bankruptcies. The Chapter 7 Voluntary Petition Packet that is available on the Court's site consists of 66 pages. These are PDF forms that can be filled out on-line and then printed for use in filing a bankruptcy case. These are the forms that Shockley prepared for the Debtors.

The forms available on the Court's website differ from bankruptcy form preparation software. The form preparation software performs many calculations and carries over entries from one form to another. For example, the software automatically totals the asset values and the debts listed on the various creditor schedules. It not only enters totals at the bottom of the sheets but carries over those totals into the Summary of Schedules form. Also, entry of assets on Schedule A and on Schedule B is internally linked to exemptions and to secured claim information so that the appropriate related entries appear on Schedule C and Schedule D. The UST's experts described how form preparation software is capable of importing credit report information into the schedules.[2] Using a software preparation package eliminates most manual calculation and much duplication of entries. By contrast, one who uses the Court's Chapter 7 Voluntary Petition Packet must manually make all calculations and has no ability to import information from other sources or even internally link information that appears on asset, exemption and debt schedules. Using form preparation software reduces data entry and helps to insure consistency. As both experts testified, using a software package cuts down on the time necessary to produce a set of forms. Utilizing the on-line forms is a significant improvement from rolling a paper form into a typewriter but having schedule preparation software available represents a significant time savings over using the on-line forms. Both of the UST's experts agreed on this point although they disagreed on extent of the advantage that the preparation software provides.

Finally, the Court finds that Shockley's hourly rate of $35.00 per hour is appropriate. Both of the UST's experts testified that they charge flat fees for normal chapter 7 schedule preparation. They also charge by the hour for other work. One expert's hourly rate is $50.00 per hour and the other charges $60.00 per hour for hourly work. The level of Shockley's experience in bankruptcy schedule preparation is properly accounted for in an hourly rate that is significantly less than the UST's experts who have a great deal more experience. There was no

---

[2] Arguably, under *Rosario*, this may be a feature that a BPP may not utilize if it crosses the line from transcribing information provided by the customer to independently utilizing the credit report information.

ORDER AND NOTICE OF EVIDENTIARY HEARING
Case No. 13-18658 HRT

testimony concerning whether or not Shockley may charge a flat fee in some cases but, even if she does, the circumstances of the services she provided to these Debtors would seem quite inappropriate for a flat fee charge.

  In the normal case, 11 hours for schedule preparation would be extraordinary. In the normal case a charge of $385.00 (effectively $344.00 after application of the $41.00 discount) would likely be excessive. In this case, the Debtors placed demands on Shockley that put this case far outside the norm. The Debtors required, and Shockley agreed, that a full set of bankruptcy schedules would be produced in time to get the case on file first thing the following morning. There was no opportunity to provide the Debtors with a set of blank schedules to complete and return to her for typing. She did not close up the office at five o'clock and tell the Debtors to return in the morning. Shockley put up with the interruptions necessitated by the Debtors' family obligations and remained available to work around those activities. She worked with the Debtors late into the night to complete the job. Under the circumstances of this case, the Court finds no fault with the $385.00 that Shockley charged for her time.

### III. CONCLUSION

  The Court agrees with the UST that a total charge of $575.00 for chapter 7 schedule preparation is an amount that is far greater that what the Court expects to see in the normal case. This case is not normal and the circumstances of Shockley's preparation of these Debtors' schedules reflect neither her usual process nor that of other BPPs. In light of those unusual circumstances, when the Court examines each individual component of the overall charges made to the Debtors in this case, the Court cannot find that Shockley's fee is excessive in violation of 11 U.S.C. § 110(h)(3)(A)(i). Therefore, it is

  **ORDERED** that the *United States Trustee's Motion to Examine Reasonableness of Bankruptcy Petition Preparer's Fees* (docket #24) is DENIED.

  Dated this __5th__ day of March, 2014.

             **BY THE COURT:**

             Howard R. Tallman, Chief Judge
             United States Bankruptcy Court